**YEAGER, Plaintiff-Appellee, v. TOMICH, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3058.   Decided April 25, 1945.

William E. Lewis, Youngstown, for plaintiff-appellee.
Peter B. Betras, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, J.

The parties to this action live about a mile apart on farms situated in Ellsworth Township, Mahoning County, Ohio.

Defendant accused plaintiff of stealing and locking her sheep in his barn. Plaintiff refused defendant's son permission to search that building. An altercation arose between the parties while they were on plaintiff's land during which defendant claimed and testified that plaintiff struck her twice and "knocked her to her knees."

Upon advice of counsel defendant signed an affidavit and had a warrant issued for plaintiff's arrest by a justice of the peace in and for Austintown Township in Mahoning County, Ohio, charging plaintiff with assault and battery and testified against him in that court.

Plaintiff was arrested and lodged in the Mahoning County Jail where he spent two nights and from which he was subsequently released upon posting bond.

Thereafter he was bound over to the grand jury, which returned a "no bill" against him and he was discharged from custody.

Subsequently plaintiff sued defendant in the court of common pleas, charged her with malicious prosecution and sought damages for the death of three cows due to lack of care while he was kept in jail and for the expense, trouble and annoyance incident to his arrest and incarceration, for injury to his "good name," and for attorney's fees.

Defendant answered plaintiff's petition in that action, and by cross-petition filed therein alleged that plaintiff "maliciously and unlawfully beat and struck her," and sought damages for personal injuries and shock to her nervous system.

The jury returned a verdict for plaintiff for three hundred dollars on his petition and against defendant on her cross-petition.

The trial judge entered judgment on that verdict and

from that judgment defendant appeals to this court on questions of law.

Plaintiff, aged seventy-two years, testified that during such altercation defendant's son, aged seventeen years, struck him "by the side of the head and knocked" him "over while he turned around" after defendant, "run right up against" him and "knocked" him back and said that he had "hit her;" that then he ordered defendant's son "off his property;" that while he was in jail his live stock were left unattended and that as a result thereof three of his cows worth $100.00 apiece died; that his reputation was injured and he expended money in defending himself; that "about five or six years ago" he had defendant's husband placed under "bond of ten thousand dollars when he shot through" plaintiff's "hat and tried to kill" him.

Defendant testified on direct examination:

"Q. Now, when this thing occurred on March 29, 1943, you then came down, did you, to my office two days later, on March 31st?

"A. Yes.

"Q. And did you tell me what happened out there?

"A. Yes, I come down to your office.

"Q. And did I give you any advice on that?

"A. Yes.

"Q. I told you, did I, to go out and have Mr. Yeager arrested?

"A. Yes.

"Q. Did I tell you where to go, Squire Rosensteels?

"A. Yes, Squire Rosensteels.

"Q. You went out there and he prepared whatever papers were necessary, you signed them and had Mr. Yeager arrested?

"A. Yes."

Defendant answered affirmatively the question asked her by counsel for plaintiff on cross-examination, "Did you tell Mr. Betras, your attorney, everything that happened out there."

Another witness aged twelve years, who lived with defendant testified that after plaintiff struck defendant he struck defendant's son, who returned the blow, as the result of which plaintiff "fell down on the ground and he got his knife."

There is evidence that defendant's cattle strayed on

plaintiff's property on numerous occasions and that he had "penned up" defendant's "sheep and cattle" before; that on another occasion the parties had had trouble over an accusation by defendant that plaintiff had stolen defendant's turkeys; that on one occasion defendant's pony and cattle had strayed on plaintiff's land and that he took them to defendant.

Also there is evidence that the records of Mahoning County show the following entry in the case of the "State of Ohio v Uriah Yeager—No bill having been found said defendant is hereby discharged."

Counsel for defendant assigned thirteen grounds of error upon which they rely to secure a reversal of the judgment of the court of common pleas, but after a careful reading of the record and of all the papers submitted to us upon appeal the conclusion is reached that counsel is urging a reversal in this case on the grounds that the evidence conclusively shows that defendant acted upon advice of counsel and "within her legal rights" in having plaintiff arrested for the claimed assault and battery upon her and having him prosecuted as stated herein; that the "evidence overwhelmingly proves" that defendant committed such assault and battery upon her; that probable cause for plaintiff's arrest existed; that she is not responsible for any damages resulting from his arrest, and that the trial judge erred to her prejudice in his general charge.

"In order for plaintiff to maintain this action for malicious prosecution" against defendant he must show by the required degree of proof "that a prosecution" was instituted against him as alleged in his petition; "that defendant was the proximate and efficient cause of setting the law in motion, or tortiously continuing the prosecution;" that such prosecution was instituted maliciously and without probable cause; that such criminal action "terminated in favor of the plaintiff, the person charged in the proceedings;" that he was injured in person, or was damaged by reason of "mental suffering, indignity and humiliation," "mortification * * * and shame and anguish of mind" suffered by reason of arrest and imprisonment, or injury was "done to (his) character, reputation and credit by the prosecution," or that he consumed time "in making defense to the prosecution," or was put to expense or lost business by reason thereof. See 25 **O. Jur, sections 4, 5, 6, 13, 14, 78, 79, pages 871, 872, 881, 882, 883, 953 and 954.**

"It is clear * * * that there must be an acquittal, or discharge, or a dismissal of the prosecution" in order to constitute "a legal termination" of the action against plaintiff

instituted by the defendant in the court of the justice of the peace. See 25 O. Jur. section 13, pages 881, 882.

If plaintiff's "arrest was not malicious, or without probable cause, or was upon advice of counsel" given after defendant gave counsel the facts "on which the advice was given" and after defendant gave counsel "a full correct and honest statement of all material facts known" and made "a full and fair disclosure of all the material facts," "from the institution to the final disposition of the prosecution," and the "advice of counsel" was "given after a full examination of the facts" in the case "then there can be no recovery in this action notwithstanding that damage accrued to plaintiff by reason of arrest." See Ash v Marlow, 20 Ohio 119; Woodruff v Paschen, 105 Oh St 398; 3 Lawson Rights, Rem. & Pr. p. 1881, n. 1; Scotten v Longfellow, 40 Ind. 23, 30.

Plaintiff proved essential element number one by the undisputed testimony of Squire Rosensteel and by that of defendant, quoted in part herein; essential element number four by the records of the court of common pleas of Mahoning County; and essential element number five by his own undisputed testimony and by other undisputed testimony cited herein that defendant proximately and efficiently set in motion plaintiff's prosecution, which disposes in part of essential element number two.

This conclusion brings us immediately to consider whether defendant, without probable cause, maliciously set in motion or tortiously continued the prosecution of plaintiff as essential elements numbers two and three require him to do.

Plaintiff introduced evidence in his case and defendant in her case of a long standing feud between the parties to which reference is made herein, from which, together with other evidence introduced by them, we believe the jury could have found that defendant maliciously set such prosecution in motion without probable cause and tortiously continued the prosecution of plaintiff, all of which testimony on that phase of this case was of such nature that it is believed this court would not be warranted in reversing the judgment of the trial court on the ground that the judge thereof erred prejudicially to defendant in overruling "defendant's motion for a verdict in her favor at the close of plaintiff's case," or "at the close of all the evidence."

We find no evidence of probative value that defendant gave counsel "a full, correct and honest statement of all material facts known by her" or made "a full and fair disclosure of all the material facts," "from the institution to the

final disposition of the prosecution," or that the "advice of counsel" was given by him "after a full examination of the facts" in the case warranting our disturbing the judgment of the trial court on that phase of the case.

It is remembered that upon cross-examination defendant answered affirmatively the question heretofore quoted herein "did you tell Mr. Betras, your attorney, everything that happened out there?"

However, as heretofore suggested herein, "in order for the advice of counsel to afford protection against an action for malicious prosecution" "a full and true statement of the facts within the knowledge of the person seeking the advice" must cover "the time from the institution to the final disposition of the prosecution." See Scotten v Longfellow and Woodruff v Paschen, supra.

We find no evidence of such a disclosure in the record submitted to us.

Finally we come to discuss defendant's claim that the trial judge erred prejudicially to defendant in his general charge to the jury.

As far as I am able to ascertain from the brief of defendant's counsel they claim that the trial judge "no place in his charge says that the binding over to the common pleas by the justice of the peace is prima facie evidence of probable cause;" that defendant "should have had the benefit of a clear unhedging statement from the trial court to the jury that the binding over by the justice of the peace to the court of common pleas for the grand jury was prima facie evidence of probable cause;" and that counsel for plaintiff made "highly prejudicial" "unwarranted remarks" as a result of which the trial judge erroneously charged the jury further.

I can not pass upon thirteen grounds of error in this opinion, quote extensively from the general charge and keep the length of this opinion within reasonable bounds. Accordingly I must be content with saying that as a result of a careful examination of the special requests to charge before argument and the general charge the conclusion is reached by the court that the trial judge did not err to the prejudice of defendant in the respects charged in the assignment of error under discussion.

It is observed that counsel for defendant did not request the trial judge to charge what they now claim he omitted to charge even when the trial judge asked counsel if there was "anything further" they desired him to charge, which it was their duty to do if they believed he had omitted to charge as they now claim he should have charged, and which oppor-

490

tunity they had after the trial judge had charged the jury further at their request.

There is no merit in the claim of defendant's counsel that counsel for plaintiff made "highly prejudicial" "unwarranted remarks."

Counsel for defendant has not called our attention to specific instances in which "the trial court erred in allowing evidence of the plaintiff to stand over the objection of defendant", or "in rejecting evidence offered by the defendant over the objection of the defendant," or "to other error manifest upon the face of the error (sic) by which defendant was prevented from having a fair trial." We do not pass on these assigned grounds of error.

It follows from what we have said that we will not reverse the judgment of the trial court on the grounds that "the verdict of the jury was made under the influence of passion or prejudice," that "the verdict of the jury is against the manifest weight of the evidence," or that "the trial court erred in over-ruling the motion for a new trial filed by the defendant," and we cannot say that "the verdict of the jury is against the law."

The judgment of the trial court is affirmed.

NICHOLS, P. J., & CARTER, J., concur in judgment.